IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FLORENCE DIANE FRANKLIN          :

                                     :

      v.                     :   Civil Action No. DKC 16-0455

                                       :

BWW LAW GROUP, LLC               :

                                     :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this consumer lending case is a motion to dismiss filed by Defendant BWW Law Group, LLC ("Defendant" or "BWW"). (ECF No. 8). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendant's motion to dismiss will be granted.

## I. Background

### A. Factual Background[1]

On May 19, 2006, Plaintiff entered into a mortgage loan agreement (the "Loan") regarding the property located at 3206 Spriggs Request Way, Bowie, Maryland 20721 (the "Property"). Plaintiff executed a promissory note (the "Note") and a deed of trust (the "Deed of Trust") to secure the Loan from NovaStar Mortgage, Inc. ("NovaStar"), the original lender. (ECF No. 8-3,

---

[1] When considering a motion to dismiss for failure to state a claim, the well-pled allegations in the complaint are accepted as true. *See Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).

at 35, 56).[2]  The Deed of Trust was recorded on May 31, 2006, in the land records for Prince George's County in Liber 25204, Folio 109-127.  (ECF Nos. 2-1, at 1; 8-3, at 34).

On February 13, 2013, NovaStar assigned the Deed of Trust to Deutsche Bank National Trust Company, solely as trustee for Harborview Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, Series 2007-6 (the "Deutsche Bank Trustee").  (ECF No. 8-5).  Defendant asserts that Plaintiff defaulted on her Loan repayment obligations on June 2, 2015.  (ECF No. 8-3, at 54-55).  On October 9, Plaintiff was served with a notice of intent to foreclose.  (*Id.* at 76-103).  In November, Ocwen Loan Servicing, LLC ("Ocwen"), as loan servicer for the Deutsche Bank Trustee, substituted Carrie Ward, Howard Bierman, Jacob

---

[2] In reviewing the motion to dismiss, the court may consider allegations in the complaint, matters of public record, and documents attached to the motion to dismiss that are integral to the complaint and authentic.  *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  Here, in its motion to dismiss, Defendant attaches relevant documentation related to the purchase, assignment, transfer, and foreclosure of the Property.  These land records, state court proceedings, and bankruptcy proceedings may be considered without converting the motion into one for summary judgment.  *See Anderson v. FDIC*, 918 F.2d 1139, 1141 (4th Cir. 1990) ("[T]he Bankruptcy Court is considered 'a unit of the district court' under 28 U.S.C. § 151, and we believe a district court should properly take judicial notice of its own records."); *Quattlebaum v. Bank of Am., N.A.*, No. TDC-14-2688, 2015 WL 1085707, at *1 n.1 (D.Md. Mar. 10, 2015); *Green v. Wells Fargo Bank, N.A.*, 927 F.Supp.2d 244, 246 n.2 (D.Md. 2013) ("A federal district court may take judicial notice of documents from state court proceedings and other matters of public record.").  Consequently, the court will consider them.

Gressing, Pratima Lele, Joshua Coleman, Richard Goldsmith, Ludeen McCartney-Green, Jason Kutcher, Elizabeth Jones, Nicholas Derdock, Andrew Brenner, and Angela Dawkins (the "Substitute Trustees") as trustees under the Deed of Trust. (ECF No. 8-6). On December 10, the Substitute Trustees filed an order to docket foreclosure against the Property in the Circuit Court for Prince George's County (the "Foreclosure Action"). The case was numbered CAEF15-37286. (ECF No. 8-4). According to the state court docket, a report of sale was filed on April 21, 2016.

### B. Procedural Background

Plaintiff, proceeding *pro se*, commenced this action in the Circuit Court for Prince George's County on January 29, 2016. Defendant received a copy of the complaint on February 4 and removed the case to this court on February 18. (ECF No. 1). According to Plaintiff, Defendant's representatives "are attempting an unlawful and illegal[] foreclosure sale of [Plaintiff's] home." (ECF No. 2, at 4). She advances vague claims against Defendant for, *inter alia*: willful fraud; wrongful or fraudulent foreclosure; quiet title; violations of the Maryland Fair Business Practices Act; the Maryland Uniform Deceptive Trade Practices Act; perjury; fraud upon the court; and slander of title. (*See id*. at 1-4). The complaint also appears to assert claims arising under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and the Real

Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.* (*See id.* at 2, 6-7). Plaintiff's complaint seeks declaratory relief, emergency injunctive relief, and monetary damages.

Defendant moved to dismiss the complaint on February 22, 2016. (ECF No. 8). Plaintiff was provided with a *Roseboro* notice, which advised her of the pendency of the motion to dismiss and her entitlement to respond within 17 days. (ECF No. 9); *see Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975) (holding that *pro se* plaintiffs should be advised of their right to file responsive material to a motion for summary judgment). Plaintiff responded in opposition (ECF No. 11), and Defendant replied (ECF No. 12). On April 4, Plaintiff moved for an emergency temporary restraining order and stay pursuant to Fed.R.Civ.P. 65, requesting that the court void and set aside all orders and judgments granting foreclosure on the Property. (ECF No. 13). The court denied Plaintiff's emergency motion. (ECF No. 15). Plaintiff also moved to dismiss Defendant's reply brief in support of its motion to dismiss. (ECF No. 14). Defendant responded (ECF No. 16), and Plaintiff replied (ECF No. 17).[3]

---

[3] Plaintiff argues that defense counsel David Solan "is basically an interloper herein and . . . is constantly attempting to testify for a witness not in appearance." (ECF No. 14, at 3-4). Plaintiff's motion largely echoes the

## II.  Standards of Review

Defendant challenges Plaintiff's standing to bring this action.  Because standing is an element of subject matter jurisdiction, Defendant's motion to dismiss for lack of standing should be treated under Fed.R.Civ.P. 12(b)(1).  *See White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005); *Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc.*, 145 F.3d 660, 661-62 (4th Cir. 1998) (affirming the district court's dismissal of the complaint for lack of standing pursuant to Rule 12(b)(1)).  The existence of subject matter jurisdiction is a threshold issue the court must address before considering the

---

arguments and conclusions contained in both the complaint and Plaintiff's response to Defendant's motion to dismiss. (*See* ECF Nos. 2; 11; 14).  The court construes Plaintiff's motion as a surreply, which is prohibited unless otherwise permitted by the court.  Local Rule 105.2(a).  Surreply briefs are generally permitted when "the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F.Supp.2d 600, 605 (D.Md. 2003).  Here, however, Defendant's reply brief reiterates the arguments that it advanced in support of its motion to dismiss and responds directly to Plaintiff's response in opposition.  Because Defendant raises no new issues in its reply, and given that Plaintiff failed to seek leave of court, Plaintiff's surreply - styled as a motion to dismiss the reply - will be denied.

Moreover, as Defendant argues, the Federal Rules of Civil Procedure do not contain a mechanism permitting parties to dismiss reply memoranda.  (*See* ECF No. 16, at 1).  Even construed as a motion to strike, Plaintiff's motion to dismiss the reply must fail.  Under Fed.R.Civ.P. 12(f), parties may move to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Defendant's reply brief is not a pleading, nor is its motion to dismiss the complaint.  *See Thomas v. Bet Sound-Stage Rest./BrettCo, Inc.*, 61 F.Supp.2d 448, 458 (D.Md. 1999).

merits of the case. *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999). The court should grant the motion to dismiss only "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). In making this determination, the court "is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* Moreover, the plaintiff has the burden of proving that subject matter jurisdiction exists. *Id.*

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006). A complaint need only satisfy the standard of Fed.R.Civ.P. 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

Allegations of fraud, which Plaintiff asserts throughout the complaint, are subject to the heightened pleading standard of Fed.R.Civ.P. 9(b). *Harrison*, 176 F.3d at 783. Rule 9(b) states that, "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Such circumstances typically "include the 'time, place, and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" *Id.* at 784

(quoting 5 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1297 (2d ed. 1990)).  Rule 9(b) provides the defendant with sufficient notice of the basis for the plaintiff's claim, protects the defendant against frivolous suits, eliminates fraud actions where all of the facts are learned only after discovery, and safeguards the defendant's reputation.  *Id.* at 784 (citation omitted).  Fraud allegations that fail to comply with Rule 9(b) warrant dismissal under Rule 12(b)(6).  *See Harrison*, 176 F.3d at 783 n.5.

Furthermore, *pro se* pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Liberal construction means that the court will read the pleadings to state a valid claim to the extent that it is possible to do so from the facts available; it does not mean that the court should rewrite the complaint to include claims never presented.  *Barnett v. Hargett*, 174 F.3d 1128, 1132 (10th Cir. 1999).  Even when *pro se* litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim.  *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

## III. Analysis

### A. Subject Matter Jurisdiction and Rule 12(b)(1) Review

Defendant argues that Plaintiff lacks standing under the Bankruptcy Code to assert claims arising from the origination of the Loan. (ECF No. 8-1, at 12). Defendant's contention challenges the court's subject matter jurisdiction. *See Borlo v. Navy Fed. Credit Union*, 458 B.R. 228, 230-31 (D.Md. 2011) (analyzing a claim of lack of standing based on failure to schedule claims in a bankruptcy petition under Rule 12(b)(1)).

The Bankruptcy Code defines property of a debtor's estate as including "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1); *see Detrick v. Panalpina, Inc.*, 108 F.3d 529, 535 (4th Cir. 1997). "Such property interests include non-bankruptcy causes of action that arose out of events occurring prior to the filing of the bankruptcy petition." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 342 (4th Cir. 2013). "The bankruptcy trustee, as representative of the estate, has exclusive authority to use, sell, or lease estate property." *Miller v. Pac. Shore Funding*, 287 B.R. 47, 49-50 (D.Md. 2002) (citing 11 U.S.C. §§ 323(a), 363(b)(1)), *aff'd*, 92 F.App'x 933 (4th Cir. 2004). Accordingly, if a cause of action accrued before the debtor filed for bankruptcy and is part of the estate, "then the trustee alone has standing to bring that claim." *Nat'l Am. Ins.*

9

*Co. v. Ruppert Landscaping Co.*, 187 F.3d 439, 441 (4th Cir. 1999) (citing *Steyr-Daimler-Puch of Am. Corp. v. Pappas*, 852 F.2d 132, 136 (4th Cir. 1988)).   Moreover, until the trustee abandons a cause of action that is rightfully part of the bankruptcy estate, no one else has standing to pursue it.   *See Nat'l Am. Ins. Co.*, 187 F.3d at 441; 11 U.S.C. § 554.

> Property belonging to the bankruptcy estate can be abandoned in three ways: (1) by the trustee after notice and hearing; (2) by court order after notice and hearing; or (3) by operation of law if property listed on the debtor's schedules of property has not been administered when the bankruptcy case closes.   11 U.S.C. § 554.   Debtors must disclose legal claims on a Schedule of Personal Property filed with the bankruptcy court.   *See id.* § 521(a)(1)(B)(i).   If the debtor's schedule does not disclose a cause of action that accrued pre-petition, that cause of action remains the property of the estate after the bankruptcy case is closed. *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008); *Stanley v. Sherwin-Williams Co.*, 156 B.R. 25, 26-27 (W.D.Va. 1993).   The debtor lacks standing to bring an unscheduled, and thus never abandoned, pre-petition claim even if the debtor was not aware of a legal basis for bringing that claim at the time the bankruptcy petition was filed.   *Miller*, 287 B.R. at 51.

*Nicholas v. Green Tree Servicing, LLC*, No. TDC-15-1279, 2016 WL 1169958, at *3 (D.Md. Mar. 25, 2016).

Here, Plaintiff filed for Chapter 7 bankruptcy on March 30, 2010.   (ECF No. 8-8).   On October 6, 2010, the bankruptcy court issued an order discharging Plaintiff's debts.   (ECF No. 8-9).

A final decree was issued, and the case was closed on January 9, 2012.  (*See* ECF No. 8-7).  Defendant asserts that "because Plaintiff failed to schedule [any of the claims she now advances], or otherwise dispute the validity of the lien, [she] lacks standing to advance such claims now."  (ECF No. 8-1, at 12).  Plaintiff did not identify any claims or set-off rights in connection with the origination of the Loan in listing personal property on her schedules.  (*See* ECF No. 8-8, at 7-9).  According to Defendant, "[h]ad Plaintiff listed the claims, then the bankruptcy trustee could have determined whether the claims were valuable assets of the estate, but Plaintiff's failure to list the claims on her schedules precludes her from raising the claims now."  (ECF No. 8-1, at 12); *see In re Furlong*, 660 F.3d 81, 87 (1st Cir. 2011) ("[A] legal claim that is totally unscheduled may not be abandoned by operation of law under § 554(c)."); *Stanley*, 156 B.R. at 26 ("As the cause of action was not formally abandoned and was not abandoned by operation of law because it was not formally scheduled, it remains property of the estate.").  In so arguing, Defendant appears to assume that all of Plaintiff's claims accrued prior to the filing of her bankruptcy case; Plaintiff, meanwhile, does not argue one way or the other, as her response merely restates large segments of the complaint.

To the extent that the court is able to discern, Plaintiff's claims concerning the foreclosure proceeding and violations of federal statutes arise not from the origination of the Loan, but from Defendant's conduct since Plaintiff filed for bankruptcy. Plaintiff's failure to schedule claims that accrued after March 30, 2010, does not deprive her of standing to assert such claims now. Defendant does not identify which specific claims accrued before she filed for bankruptcy and should be dismissed for lack of standing. Although it is Plaintiff's burden to show that subject matter jurisdiction exists, the record does not demonstrate that all of Plaintiff's alleged claims are barred for failure to schedule them upon initiating her bankruptcy action, and some clearly postdate the bankruptcy filing.

**B.   Failure to State a Claim Under Rule 12(b)(6)**

Defendant also argues that, assuming Plaintiff possesses standing to bring this action, the complaint nonetheless fails to state a plausible claim for relief and should be dismissed under Rule 12(b)(6). In her response to the motion to dismiss, Plaintiff does not challenge Defendant's specific arguments; rather, Plaintiff repeats the same conclusory allegations and unsubstantiated claims throughout her opposition brief. Thus, the court has discretion to treat Defendant's arguments as uncontested and dismiss the complaint. *See Grinage v. Mylan*

*Pharm., Inc.*, 840 F.Supp.2d 862, 867 n.2 (D.Md. 2011) (citing *Ferdinand-Davenport v. Children's Guild*, 742 F.Supp.2d 772, 777 (D.Md. 2010)) ("[The plaintiff] failed to address this argument in her response, so the court will treat this claim as abandoned."). Moreover, there is no obvious lack of merit in Defendant's motion to dismiss under Rule 12(b)(6) given the allegations contained in the complaint, none of which state a plausible claim for relief or give rise to a cognizable cause of action.

As an initial matter, Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Pursuant to Rule 8(d)(1), each allegation in a complaint "must be simple, concise, and direct." Plaintiff must also state her claims "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed.R.Civ.P. 10(b). Far from a model of clarity, the complaint does not set forth allegations in numbered paragraphs, as required by Rule 10(b). Nor does Plaintiff include her claims in specific, distinct counts. As Defendant notes, "Plaintiff does not properly delineate the causes of action in her [c]omplaint, nor does she provide any actual elements to a cause of action supporting the relief she is requesting." (ECF No. 8-1, at 5). Moreover, throughout the complaint, Plaintiff refers to multiple defendants, including

Ocwen.   Ocwen, however, is not a party to this action; BWW is the sole defendant, and its participation in the Foreclosure Action began in November 2015 when its agents were substituted as trustees.   Plaintiff's allegations concerning the conduct of others are not connected to Defendant.

Without relevant factual substantiation, Plaintiff asserts claims against Defendant for: willful fraud; wrongful or fraudulent foreclosure;[4] quiet title; violations of the Maryland Fair Business Practices Act;[5] the Maryland Uniform Deceptive Trade Practices Act;[6] perjury;[7] fraud upon the court; and slander of title. (ECF No. 2, at 1-4).

---

[4] Plaintiff cannot assert a claim for "wrongful foreclosure" because no such cause of action exists under Maryland law. *See Davis v. Wilmington Fin., Inc.*, No. PJM-09-1505, 2010 WL 1375363, at *7 (D.Md. March 26, 2010) ("Plaintiffs cite no authority, and the Court can find none, that 'Wrongful Foreclosure' is a separate cause of action in Maryland.").

[5] The Maryland Fair Business Practices Act does not exist. Instead, the Maryland Consumer Protection Act ("MCPA") provides that "[a] person may not engage in any unfair or deceptive trade practice . . . in [t]he sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services." Md. Code Ann., Com. Law § 13-303(1).   Unfair or deceptive trade practices include any "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers." *Id.* § 13-301(1).   The statute includes a private right of action. *Id.* § 13-408(a).

[6] Maryland has not adopted the Uniform Deceptive Practices Act.   Instead, deceptive trade practices are outlined in the MCPA.   *See* Md. Code Ann., Com. Law § 13-301, *et seq*.

To the extent that her claims sound in fraud, Plaintiff has failed to plead facts sufficient to state a claim, certainly falling far short of Rule 9(b)'s heightened pleading standard. (*See id.* at 9-11, 12-13).   Here, Plaintiff's allegations concerning willful fraud and fraud upon the court are devoid of "the time, place, and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby." *Harrison*, 176 F.3d at 784 (citation and internal quotation marks omitted).   Similarly, Plaintiff has not set forth any particularized facts supporting liability under the MCPA.   She does not identify specific provisions of § 13-303 that Defendant allegedly violated, but § 13-408(a) "requires an aggrieved consumer to establish the nature of the actual injury or loss that he or she has allegedly sustained as a result of the prohibited practice." *Citaramanis v. Hallowell*, 328 Md. 142, 152 (1992).   Simply put, the complaint contains no specific facts in support of her claims for deceptive trade practices or sounding in fraud.

---

[7] Factual disputes are common in litigation, and it is not the province of the court to make such credibility determinations.   Plaintiff has not substantiated any contention that Defendant willfully provided false information, but, even if it had, it is beyond the court's purview in this civil matter to provide relief under criminal statutes. *See United States v. Batchelder*, 442 U.S. 114, 124 (1979) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion."). Plaintiff cannot maintain an action for perjury.

15

Plaintiff also vaguely advances a claim to quiet title. (*See* ECF No. 2, at 2).  Under Maryland law, a quiet title action may be maintained only "if an action at law or proceeding in equity is not pending to enforce or test the validity of the title, lien, encumbrance, or other adverse claim."  Md. Code Ann., Real Prop. § 14-108(a).   Accordingly, because the Foreclosure Action is pending in the Circuit Court for Prince George's County (*see* ECF No. 8-4), Plaintiff's quiet title claim is precluded by Maryland law.  *See Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 197 n.1 (4th Cir. 2014) (noting that a "pending foreclosure proceeding . . . would bar the current quiet title claim"); *Haley v. Corcoran*, 659 F.Supp.2d 714, 721-22 (D.Md. 2009) ("Because the foreclosure action is still pending, the [plaintiffs'] quiet title claim against [the defendant] will be dismissed.").

In conclusory and disjointed fashion, Plaintiff asserts claims arising under the FDCPA due to: incorrect loan number; contract; wrong party-in-interest; 30 days' notice; final letter of demand; incorrect loan amount; validate debt; and assignment. (ECF No. 2, at 2, 12).  To state a claim under the FDCPA, Plaintiff must demonstrate that: "(1) [she] has been the object of collection activity arising from consumer debt, (2) [Defendant] is a debt[] collector as defined by the FDCPA, and (3) [Defendant] has engaged in an act or omission prohibited by

16

the FDCPA." *Stewart v. Bierman*, 859 F.Supp.2d 754, 759 (D.Md. 2012) (citation omitted). Here, Plaintiff does not identify which specific FDCPA provisions Defendant allegedly violated, and her threadbare allegations are insufficient to state a claim under the statute. Assuming *arguendo* that Plaintiff has alleged facts supporting her conclusion that Defendant is a "debt collector" within the meaning of the FDCPA, the complaint nonetheless "lacks specific allegations concerning the time, dates, conduct, or actors involved in any violation of the FDCPA." *Hill v. Wilmington Fin., Inc.*, No. 13-CV-524-RWT, 2013 WL 4659704, at *4 (D.Md. Aug. 29, 2013). Section 1692e prohibits debt collectors from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. To the extent that Plaintiff alleges fraudulent or deceptive conduct under § 1692e, she has simply failed to provide factual context in support of her assertions.

Plaintiff also appears to argue that Defendant violated § 1692g by failing to "verif[y] and [v]alidate the allege[d] debt before initiating [the Foreclosure Action] . . . and willfully violating [the FDCPA] and attempting an unlawful, illegal and wrongful foreclosure." (ECF No. 2, at 18). Section 1692g(a) governs the validation of debts and requires that:

> Within five days after the initial
> communication with a consumer in connection
> with the collection of any debt, a debt
> collector shall, unless the following
> information is contained in the initial
> communication or the consumer has paid the
> debt, send the consumer a written notice
> containing[:] (1) the amount of the debt;
> (2) the name of the creditor to whom the
> debt is owed; (3) a statement that unless
> the consumer, within thirty days after
> receipt of the notice, disputes the validity
> of the debt, or any portion thereof, the
> debt will be assumed to be valid by the debt
> collector; (4) a statement that if the
> consumer notifies the debt collector in
> writing within the thirty-day period that
> the debt, or any portion thereof, is
> disputed, the debt collector will obtain
> verification of the debt or a copy of a
> judgment against the consumer and a copy of
> such verification or judgment will be mailed
> to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's
> written request within the thirty-day
> period, the debt collector will provide the
> consumer with the name and address of the
> original creditor, if different from the
> current creditor.

Here, there is no allegation identifying a communication – let alone an initial communication in connection with the debt collection – that fails to provide notice as set forth in the statute. *See Short Evans v. The Fisher Law Grp., PLLC*, No. DKC-14-1994, 2015 WL 8606422, at *3 (D.Md. Dec. 14, 2015). Moreover, the statute does not require that a debt collector validate a debt within five days of contacting a consumer to collect that debt. Rather, the statute requires the debt collector to notify the consumer within five days of initial

18

contact of his or her right to seek validation within 30 days. *See Shah v. Collecto, Inc.*, No. 2004-4059, 2005 WL 2216242, at *6 (D.Md. Sept. 12, 2005) (dismissing the plaintiff's claim under § 1692g because "there is no specified time period within which the debt collector must complete the verification"). Plaintiff misreads the statute, and her conclusory allegations concerning Defendant's alleged failure to verify and validate the debt are insufficient to state a claim under the FDCPA.

Furthermore, Plaintiff indirectly invokes RESPA, asserting that she sent a qualified written request ("QWR") demanding proof of ownership of the Note and Deed of Trust but received no response from Ocwen and Defendant. (ECF No. 2, at 7). Here, Plaintiff has not provided any allegations in support of her contention that her correspondence satisfied the requirements of a QWR. *See* 12 U.S.C. § 2605(e)(1)(B). She fails to provide any additional information about the nature of her purported QWR or other correspondence with Defendant, including the date and substance of such communications. Because Plaintiff does not plausibly allege that her correspondence constituted a QWR, the adequacy of Defendant's response thereto is not governed by RESPA. *See Bullock v. Ocwen Loan Servicing, LLC*, No. PJM 14-3836, 2015 WL 5008773, at *10 (D.Md. Aug. 20, 2015). As a result, the allegations in the complaint do not plausibly state a claim against Defendant under RESPA.

As best the court can discern, Plaintiff makes two additional arguments challenging the Foreclosure Action and in support of her claims.  First, she argues that the Note and Deed of Trust were separated.  According to Plaintiff, "[t]he legal effect of separating the [Note] from the [Deed of Trust] is to nullify the enforcement provisions of the [Deed of Trust] and to render the same a slander to the title of the [P]roperty." (ECF No. 2, at 24).[8]  Plaintiff's argument is unavailing, however, as courts in this district have repeatedly rejected the "show me the note" argument.  *See Quattlebaum*, 2015 WL 1085707, at *6; *Harris v. Household Finance Corp.*, RWT-14-606, 2014 WL 3571981, at *2 (D.Md. Jul. 18, 2014) ("[T]here is no recognizable claim to demand in an action brought by a borrower that the lender produce "wet ink" signature documents.").  Under Maryland law, Defendant is not required to present the original "wet-ink" copy to Plaintiff in order to enforce the Note.  *Jones v. Bank of New*

---

[8] Plaintiff appears to assert a distinct claim for slander of title.  To maintain such an action, Plaintiff must "establish that [Defendant], with malice, published a known falsity to a third party that caused special damages."  *Gibbons v. Bank of Am. Corp.*, No. JFM-08-3511, 2012 WL 94569, at *10 (D.Md. Jan. 11, 2012) (citations omitted).  Plaintiff fails to allege any facts in support of any elements of her slander of title claim, and it will be dismissed.  The inescapable fact is that, despite Plaintiff's protestations, "the Deed of Trust gives the mortgagee or assignee the right to foreclose on the Property."  *Brown v. Ocwen Loan Servicing, LLC*, No. PJM 14-3454, 2015 WL 5008763, at *7 (D.Md. Aug. 20, 2015), *aff'd*, (4th Cir. May 6, 2016) (dismissing the plaintiff's cause of action for slander of title).

*York Mellon*, No. DKC-13-3005, 2014 WL 3778685, at *4 (D.Md. July 29, 2014).

Second, Plaintiff appears to advance a "vapor money" claim, asserting that "Plaintiff[] [is] the true lender[] and [NovaStar]/[Ocwen] is true borrower." (ECF No. 2, at 23). "The 'vapor money' theory states that any debt based upon a loan of credit rather than legal tender is unenforceable." *Andrews v. Select Portfolio Servicing, Inc.*, No. RDB-09-2437, 2010 WL 1176667, at *3 (D.Md. Mar. 24, 2010) (citation omitted). One reviewing court explained the theory thusly:

> Plaintiff alleges that the promissory note he executed is the equivalent of "money" that he gave to the bank. He contends that [the lender] took his "money," *i.e.*, the promissory note, deposited it into its own account without his permission, listed it as an "asset" on its ledger entries, and then essentially lent his own money back to him. . . . He further argues that because [the lender] was never at risk, and provided no consideration, the promissory note is void *ab initio*, and [the defendants'] attempts to foreclose on the mortgage are therefore unlawful.

*Demmler v. Bank One NA*, No. 2:05-CV-322, 2006 WL 640499, at *3 (S.D.Ohio. Mar. 9, 2006). Claims based on the vapor money theory have "been consistently rejected by federal courts as frivolous and insufficient to withstand a motion to dismiss." *Andrews*, 2010 WL 1176667, at *3; *see Evans v. Beneficial Fin. I, Inc.*, No. DKC-14-1994, 2015 WL 535718, at *5 (D.Md. Feb. 9,

2015) (collecting cases).   Accordingly, all of Plaintiff's
claims that rely on any variation of the vapor money theory must
be dismissed.

The court will also dismiss Plaintiff's requests for
declaratory relief.   In the complaint, Plaintiff seeks a
declaratory judgment that Defendant and its agents "had no legal
standing or the proper legal or equitable interest in either the
Note [or] [Deed of Trust] to institute or maintain a
foreclosure." (ECF No. 2, at 26-27).[9]  These arguments amount to
a collateral attack on the state court's judgment in the ongoing
Foreclosure Action.   "The Maryland courts and this [c]ourt,
applying Maryland law, have consistently held that *res judicata*
bars collateral attacks on foreclosure judgments entered in the
[c]ircuit [c]ourts." *Jones v. HSBC Bank USA, N.A.*, No. RWT-
09CV2904, 2011 WL 382371, at *5 (D.Md. Feb. 3, 2011), *aff'd*, 444
F.App'x 640 (4th Cir. 2011) (citations omitted).   Moreover, as
Judge Messitte recently explained:

> [I]f a plaintiff requests a declaration that
> the [her] mortgage and note are
> unenforceable, the request preempts the

_____

[9] "Lack of standing" is not an affirmative cause of action;
it is a defense that Plaintiff could have raised in the state
foreclosure proceedings.   "[A]fter confronting this precise
issue on multiple occasions, courts in this district have
repeatedly concluded that a claim for lack of standing is not
viable where a defendant has not sought affirmative relief."
*Heaney v. Quicken Loans, Inc.*, No. JFM-14-1002, 2014 WL 4686682,
at *3 (D.Md. Sept. 16, 2014) (citations omitted).   Here,
Defendant is simply defending a suit brought against it.

> foreclosure and has the same effect as a
> request for an injunction to prevent
> foreclosure; both result in precisely the
> same interference with and disruption of
> state proceedings that the longstanding
> policy limiting injunctions was designed to
> avoid.

*Brown*, 2015 WL 5008763, at *4 (citation omitted); *see Parker v. Am. Brokers Conduit*, No. JKB-15-3652, 2016 WL 1242625, at *3, *3 n.10 (D.Md. Mar. 29, 2016). Plaintiff presents no legal or factual basis entitling her to the declaratory relief she requests.

Accordingly, the complaint cannot withstand review under Rule 12(b)(6). Plaintiff provides only conclusory statements, and the complaint fails to contain sufficient factual allegations that, when accepted as true, state a plausible claim for relief. Instead, here, the complaint contains a plethora of extraneous information seemingly unrelated to Defendant's conduct and fails to provide Defendant "fair notice of what the . . . claim[s] [are] and the grounds upon which [they] rest[]." *Twombly*, 550 U.S. at 555 n.3 (citations omitted). Defendant's motion to dismiss will be granted.

## IV.   Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be granted.   A separate order will follow.

                                                            /s/
                                            DEBORAH K. CHASANOW
                                            United States District Judge